## FRANKLIN ROLLINS *vs.* NATHANIEL MUDGETT, JR.

Where a Colonel of a regiment of militia signs a sergeant's warrant, leaving a blank for the insertion of the name of the sergeant, and authorizes the captain of the company to insert the name of such person as he shall think proper, and the captain inserts the name of a private, and on the back of the warrant appoints him clerk, and this is afterwards made known by the clerk to the Colonel, who expresses no dissatisfaction; although the proceeding is irregular, the person thus appointed clerk, may legally act under the appointment.

In an action for a fine for absence from a company training, it is competent to prove by parol evidence, no record in relation thereto being made by the clerk, that the company did meet at the time and place appointed, and that the defendant was absent.

If the clerk of a company verbally resigns, and delivers over the company records, and the resignation is accepted by the captain, another clerk may be appointed in his stead.

The neglect to record the appointment of sergeant and clerk on the company books, does not render the appointment invalid.

THIS was a writ of error, to reverse a judgment of a Justice of the Peace, in an action brought by *Mudgett,* as clerk of a company of militia, against *Rollins,* to recover a fine for neglecting to appear at a company training. The errors assigned, and the evidence apparent on the record of the Justice, will be found stated in the opinion of the Court.

*J. Appleton* argued for the plaintiff in error, and cited Militia Law of 1834, *c.* 121, § 8; *Burt* v. *Dimmock,* 11 *Pick.* 355; *Commonwealth* v. *Kellogg,* 9 *Pick.* 557; 2 *Brock.* 64; 1 *Yerger,* 149; 2 *Yerger,* 337; *Commonwealth* v. *Pierce,* 15 *Pick.* 170; *Cobb* v. *Lucas,* 15 *Pick.* 9; *Tripp* v. *Garey,* 7 *Greenl.* 266; *Abbott* v. *Crawford,* 6 *Greenl.* 214.

*H. Hamlin* argued for the defendant in error, and cited *Bullen* v. *Baker,* 8 *Greenl.* 390; *Fullerton* v. *Harris, ib.* 393; *Lovett, pet.* 16 *Pick.* 84; *Haskell* v. *Haven,* 3 *Pick.* 404; *Field, pet.* 9 *Pick.* 41; *Stat.* 1837, *additional to Militia Act of* 1834, *c.* 276, § 8; *Buck* v. *Hardy,* 6 *Greenl.* 162; *Welles* v. *Battelle,* 11 *Mass. R.* 477; *Avery* v. *Butters,* 9 *Greenl.* 16.

Rollins *v.* Mudgett.

The opinion of the Court was drawn up by

EMERY J.— In the original case wherein judgment was rendered in favor of the present defendant in error, we perceive that on the trial before the Justice, the records and roll, the sergeant's warrant of plaintiff, and the commission of the captain were before the magistrate, all other facts of notice, enrolment, and liability to do duty, &c. were admitted. The plaintiff in error, assigns five errors for which he claims a reversal of the judgment. If any of the evidence objected to by the counsel of the original plaintiff, but admitted, ought not to have been received, though it may be apparent on the record, that circumstance alone would not be a reason for reversing the judgment at the suit of the present plaintiff in error.

The first error assigned is, because it appears that *John Emery,* the captain of the B company in *Dixmont,* never appointed said *Mudgett* sergeant of said company, and that the said commanding officer of the company never made any return of any appointment of the said defendant in error, sergeant, as by law he should.

The evidence of the captain is decisive, that he did appoint the plaintiff as sergeant by filling up with the name of the plaintiff one of the blank sergeant's warrants, signed by the Colonel of the Regiment, which were sent by him to the captain, and which the Colonel told him to fill with the names of such persons as he should appoint; and that on the back of said warrant, he appointed the plaintiff clerk. No objection is taken to the subsequent qualification of the clerk.

The second error assigned, is, that it appeared by the record of said Justice, that the commanding officer of the Regiment, never granted a warrant to any individual as sergeant, nor did he appoint said *Mudgett* as sergeant, or know of his appointment.

And in behalf of the plaintiff in error, his counsel insists, that the law requires two several appointments, one of sergeant, and one of clerk, that they are distinct acts, to be done by different persons, that though the captain appoints in the first instance, yet he must make a return thereof in writing to the commanding officer on the company or regimental roll. That in this case, the Colonel has never acted, has not received the appointment made by the

captain, nor issued a warrant, and that a blank signature is no warrant. That it is a judicial discretion, and the Colonel must know whom he appoints, and he may disapprove the captain's judgment, and reliance is placed on *Burt* v. *Dimmock*, 11 *Pick*. 355, to sustain these positions.

The *stat. c.* 121, *sec.* 8, declares that the non-commissioned officers of companies, shall be appointed by the captains of their respective companies, who shall forthwith make return thereof to the commanding officer of their respective regiments or battalions, and they shall grant them warrants accordingly. We consider that the delivery of the warrant by the captain, and the retaining of it by the sergeant, and in this case clerk, of the appointment to these officers, without any evidence of his having resigned his office, or being discharged or doing duty in the ranks as a private afterward, is evidence of his being duly appointed. It is the document regularly proving his authority.

In *Fullerton* v. *Harris*, 8 *Greenl.* 393, on an approval of a jail bond by Justices after it was signed, but it was a blank as to the names of the parties, the penal sum, the description of the execution, and the written parts over the signatures, seals, and attestation of the witnesses, and was filled up by the jailer, or by some other person by his direction under verbal authority, communicated by the bearer of the bond, the jury having found, that the blanks were all filled up by the consent and authority of the principal and sureties prior to the delivery of the bond to *Harris*, it was held, to be as binding an instrument as if it had been executed in the usual manner, and made perfect in all respects before the signature. *Zouch* v. *Clay*, 1 *Ventr.* 185. The late Chief Justice *Mellen* in delivering the opinion of the Court, speaks of this approval by the Justices, " that the jailer might be considered as acting under the natural conclusion, that they had acted understandingly in the discharge of the duty by law assigned them, and in making the certificate of their judgment in the premises," and remarks, " no doubt the above course was a very careless and improper one, but the jail keeper is not answerable for the looseness of proceedings on the part of the approving Justices in signing their approbation, without ascertaining the sum due on the execution, and the Justices would not be allowed to contradict or explain

away their own certificate, disprove the facts certified, and thus expose an innocent officer to a severe penalty, because he reposed confidence in their official sanction."

The mode in which this business was managed, was adopted probably because found conformable to the practical convenience of officers in the militia. The word grant, it is said, seems to import the exercise of discretion, and we may say, the words, *shall grant the warrant accordingly* seems to make it the imperative duty of the commanding officer of the Regiment to do it, after being informed by the captain of the appointment. If the officer relies on the discretion of the captain in making the appointment, as he doubtless must, as being best acquainted with the merits of the individuals under his command, and their qualifications to become non-commissioned officers, we are not aware that any injury can arise from his delivering warrants signed by the Colonel to the captain, to be filled up in the manner this was. We are induced more readily to come to this conclusion, because in the same section it is provided, that in case there shall be but one company of cavalry or artillery in any brigade, then the warrant shall be granted by the captain of such company.

In the case cited by the counsel for the plaintiff in error, *Burt v. Dimmock*, 11 *Pick.* 355, the warrant was not signed by the Colonel himself, or by his specific direction, but the Colonel's name had been affixed to it by the Adjutant of the Regiment in pursuance of a general authority from the Colonel. In the case, *Coffin v. Wilbour*, 7 *Pick.* 149, as to an approval of a sentence of a court martial, the Court were inclined to the opinion that it ought to have been revised by the Major General, and his approbation certified under his own signature. The difference of the call for judicial discretion in this last case, and the issuing of a blank warrant for the sergeant of a militia company is very striking. The clerk ought not to be reduced to the mortification of being considered an usurper of office, by accepting from his captain the sergeant's warrant duly signed by the Colonel's own hand, which the captain was authorized by the Colonel to fill up, and on which the captain has indorsed the appointment made by himself of the same individual as clerk. In the fall of 1837, it was proved he signed the roll as clerk, and at muster informed the Colonel, that he had been

appointed sergeant and clerk. No disapprobation of this appointment on the part of the Colonel appears, and the silence after this intelligence, may well be deemed a ratification. If the higher officers have been indiscreet in the order of proceeding the clerk is blameless. In the case of *Charles W. Lovett, pet.* 16 *Pick.* 84, going almost the whole length of the present, it was held, that as to the supposed irregularity of the appointment in other respects, that depends upon parol evidence, which is inadmissible to contradict or control the written evidence of the appointment.' That being in common form we can take no notice of the parol evidence. In our judgment the first and second errors are not well assigned.

The third error assigned is, that it did not appear by any records of the company that there was any meeting of said company, or that the plaintiff in error was absent, which the Justice ruled was unnecessary. And we discover in the Justice's proceedings, that there was no record of any meeting of the company at the days and places alleged in the plaintiff's suit, and no record of absence (except the mark of absence on the roll) both of which facts the Justice permitted to be proved by parol. Here was indeed a careless omission on the part of the clerk. But the record would be subsequent to the delinquency, which is a fact, and the question is, whether competent evidence of it was exhibited. In *Commonwealth* v. *Peirce,* 15 *Pick.* 170, there were pencil marks against names of some of the members of the company; and it was held, that the clerk's testimony in explanation of the mark was inadmissible, and reference is made to *Commonwealth* v. *Paul,* 4 *Pick.* 254. This last decision was made on the peculiarity of the *Mass. stat.* of 1809, *c.* 108, *sec.* 18, which permits the clerk to testify as to notice, but not as to other facts. Our *stat. c.* 279, passed *March,* 28, 1837, *sec.* 8, makes all commanding officers, subaltern officers, and clerks of companies, competent witnesses in law, to testify to all or any facts, within their knowledge in any suit commenced by said clerk or commanding officer, for the collection of any fine or forfeiture under the militia acts. The notice, enrolment, and liability to do duty, &c. were admitted. We must understand, that this was notice to meet as required, and should have been obeyed. The orders do not become unavailing by the omission of the clerk to record them. In *Cobb* v. *Lucas,* 15 *Pick.* 7, it was held, that

the authority of the orders of the commanding officer do not depend upon their being recorded. And we are not prepared to hold under our statute, that the parol proof was wrongly introduced to prove the fact of the meeting of the company, and the absence of the original defendant. There was on the roll the mark of absence. The clerk was competent to prove all facts within his knowledge. The testimony too was open to impeachment, if it could be contradicted.

The judgment cannot be reversed for the third assigned error.

The fourth error assigned, is, " that it appeared, that *Joseph Gilman* was appointed, sworn, and qualified as clerk of the company, and that there was no discharge of him on the records of the company, until after the institution of the suit, and that the now defendant was appointed as clerk long before said supposed discharge of said *Gilman.*" It was proved on the trial, that the Colonel of the Regiment was present when *Gilman,* after refusing to obey an order to parade the company, then resigned the office of clerk in 1834, when the company was called out for *May* inspection, gave the roll and books to *Henry Mudgett,* the then commander of the company, and said he would have nothing more to do with it, and that he, *Mudgett,* must appoint a new clerk. No written discharge was ever made by *Mudgett* to *Gilman.* It appeared, that *Gilman* was present in the ranks and did duty, in no way claiming any authority as clerk or sergeant. The record of his resignation was made by a clerk, named *Craig,* after the commencement of the suit. *Craig* resigned his office of sergeant and clerk in *May,* 1836. In 9 *Pick.* 41, *Jabez Field, petitioner,* it was held, that the captain had a right to appoint the clerk, and of course to accept his resignation. The clerk in that case surrendered his sergeant's warrant. In the present it does not appear that there was any application by *Gilman* for a written discharge. He dispensed with its being given. As the captain of the company appointed a new clerk on *Mr. Gilman's* resignation and request, he must be considered as accepting it. And *Mr. Gilman* appears perfectly willing to do the duty of a private. We do not perceive the propriety of the present plaintiff in error attempting to impugn what was so mutually satisfactory. It was a perfect practical dis-

Rollins *v.* Mudgett.

charge from office. For this error assigned we cannot reverse the judgment.

The fifth assigned error is, that the Justice rendered judgment that the plaintiff should recover, when by law, he should have rendered judgment that the plaintiff should not maintain his suit.

From the view which we have taken of the other assigned errors, we cannot consider that the fifth error is well assigned. On the contrary we believe that the Justice drew the right conclusion from the evidence legally admissible, and therefore consider that his judgment be affirmed, and that the defendant in error recover his costs of the present suit against the plaintiff in error.